Court. Counsel. My name is Martin Serkiel and I'm on behalf, I'm here on behalf of a student, initialed SW, in support of the position that the District Court erred when granting Southlake Police Department's motion for summary judgment that SW was not a victim of discrimination based upon disability pursuant to Section 504 of the Rehabilitation Act of 1973 or the Disabilities Act. By the way, on a personal note, I want to thank the court and counsel for their understanding. I've had a number of health issues over the last year that's permitted me to reschedule a number of times, so I really want to thank everyone for that. And a brief administrative issue. While preparing for argument, we learned that we... How is it that you waited until the night before argument to look at the relevant facts? Actually it was last week. And actually I've looked at the relevant facts for like months and months and months. Yeah, that's what I would think. It just now hits you that that was lesser rather than greater? You know, Your Honor, as my dad always used to say, there's never an excuse, there's always a reason. During both times I was working on the briefs, I had just gotten out of the hospital. And the other one, I was actually going in for heart surgery. So, you know, we did have... All right, well we have your letter and you've clarified. What difference does that make in the facts? Well, you know, as it turns out, actually I think it helps our position, as it turns out. So we have the issue here... Does it mean that Slessor wasn't nervous, so he thought Baker should just stand down? Exactly. Is that how you're construing it versus Baker wanting to charge in, which was the way you construed it before? Well, Baker did charge in. Let me say something about Officer Baker for a minute. We're not here to demonize the officer. We truly respect the work that SROs do and police officers do in our schools all over the United States. We're here because we believe he made a mistake and we also believe that this is a teaching moment for ourselves as lawyers and also for clients that we represent, both my families and the officers. So we think it's an important issue. Well, while we're on the teaching moment, as I understand the appeal, the 1983 issue is not being appealed. That's correct, Your Honor. And yet 1983 language is strewn throughout this whole concept of ratification, this whole case. Can we just focus on Rehabilitation Act and ADA and what that has, and talk to me about what are the elements of that and how is there a fact issue on those elements? Well, yes, Your Honor. Talk to us. The issue for us is that during the period that the young man was going through this mental illness, he was trying to handle that. And one of the ways that he did not do that was he went in and he handcuffed the young man. The case law that we've cited in our briefs gives us kind of almost what I would call a checklist. You know, what's a reasonable officer supposed to do when he or she comes upon a child that they know is mentally ill? And by the way, one of the threshold questions that we wanted to answer, because it came up in Judge O'Connor's writing on the 504 section, is whether or not the officer knew the child had a disability. Now, they write in their brief that they did not know that he had a child, was receiving special education services, which is true, but that's not the issue. The case, the factual aspects of the case are clear, that he knew that the child had a disability. Through the very first meetings that they had with the child, they knew he was suicidal. The officers met together. Officer Slusser told Officer Baker that the child had a behavioral outburst at school. They visit the child at home. Officer Baker admits in the report that he did after the incident that everyone knew the child was mentally ill. So as a threshold issue, we know that Officer Baker knew the child had a disability, which, of course, is an important consideration when we look at these cases. Because arguably, when an officer's out in the field and there's someone acting up, we can't hold them responsible to know that a person has a disability at the onset, hence the Hainsey exception, or the Hainsey v. Richard exception, which we're here to discuss. So what is that checklist? How does that affect us today? Well, one of the things that the various cases teach us is that the age of the person involves an important issue. Here we have an 8-year-old. Another thing that the case law tells us is the body size and type of the person is also important. Well, you know, I agree that it would have been irrational to think that an 8-year-old without benefit of a gun or something like that could use lethal force simply by punching you. On the other hand, the concept of lethal force is in response to lethal force or potentially lethal force. But that doesn't mean that you have to just let somebody punch you. If you don't reasonably think they could kill you by punching you, that doesn't mean you have to just stand there and be punched. You can respond to that under the Hainsey exception, right? Well, I think the answer to that, specifically in terms of the strict language of the Hainsey exception, is only if there's life-threatening force. Though I would agree with you, for a reasonable officer, particularly looking back at an ADA or 504 issue, someone can say that's a reasonable accommodation that one need not make, meaning that they have the right to go in and address the child's emotional needs. I mean, if the child was punching the principal, I know that wasn't the exact facts, but let's say when Baker walked in, the child was punching the principal, and there was no reasonable belief that that was going to kill the principal. Does the officer just have to stand there and let the principal get punched, or can the officer use nonlethal force to put an end to that behavior under the Haines exception? I think we all would agree that the officer has not just the right to, but a duty to keep the environment safe. I mean, of course. I mean, I think that's just fair. Nobody's here to handcuff the officers from doing their duty to protect the public, particularly protect emotionally or mentally ill child. The issue is, under the Haines exception, kind of going back to the, let's say, a Fourth Amendment claim of unreasonable or unnecessary restraint or seizure. We're not there. We're talking about a statutory issue that gives a right for a person who has a mental health disability to have accommodations and modifications to the environment made to address their needs. So going back to your particular question, what could a reasonable officer have done? Well, you know, this Court has probably had hundreds, if not thousands, of cases dealing with police officers involved with individuals. I'm not so sure there's been as many with children. I'm sure there's some. In fact, in counsel's writing, he talks about that we don't have a case that's directly on point. Well, that's kind of the issue. But see, that's a qualified immunity analysis, which isn't what this is about, because this isn't a 1983 case at this point. It was in the district court, but it isn't here. Exactly. And, in fact, that's why we appeal that, because we believe that under the statutory issue, the writings of the ADA and 504 and the case law that flows from it, it's actually an easier appeal. I mean, it's never easy to win your appeal, right? But it's an easier row to hoe than to go through the constitutional methodology. Let me ask you this. Are you seeking to undo the summary judgment in Baker's individual favor? Or only the police department? Only the police department, Your Honor. Okay. Because that was not clear to me before. Thank you for that. I'm sorry for that. I'll declare it. So a win for you would be a reversal of the ADA-RA ruling as to the police department and an affirmance of the 1983 claims and all the individual claims against Baker. That's correct. We never appealed those, correct, Your Honor. So those are different. Okay. That's good. Also, you know, going back to the issue with Officer Baker, there's really a part B to that. Part A is the handcuffing of the child. Part B is what happens during that time. I don't know if you all have had the time as yet to see the tape and listen to it. But what happens after the child is handcuffed, it's horrific. I mean, the interactions that Sergeant Baker has with the young man during that period are abominable. And I think everyone would agree. In fact, his police department agreed they were unprofessional. He lost his job because of it. So one of the things, the Hainsey versus, go ahead, Your Honor. What are the damages that result from the post-handcuff? We have in our brief, and we had a declaration from the child's therapist talking about the emotional distress that was exacerbated by the handcuffing and the way that the officer treated him. So, you know, that would be a fact issue if we ever get back to a jury that we would address, Your Honor. But you're prepared to present damages based on just the post-handcuff conduct? We haven't gotten that far. We would do both. But let me answer your question very quickly, somewhat differently. We could avoid this whole issue of the Hainsey exception. We could avoid this whole issue about whether or not there was a reasonable accommodation to handcuff the child by recognizing that particular issue, that during the handcuffing, the child's right of a person with a disability were violated under 504 in the ADA by the way Officer Baker handled him and exacerbated his mental illness. So I think the court could possibly just remand the case back to the district court on the section 504 claim and the ADA claim solely related to the post-handcuff issue. What should Officer Baker have done? Very, very quickly. He could have done what we call, he could have done nothing. I mean, the child's like a match. One of the things that happens is they burn out naturally. Instead, Officer Baker put gasoline on it and that inflamed the whole situation. I mean, the child just could, they could have done nothing and just waited a few seconds. He was in the hall quietly, not quietly, he was in the hall and even they say there was nobody around. So stand and watch. That's one of the things they could have done for a few minutes. They could have used what we call soft hands or hard hands. They could have had two officers come get him. They could have restrained him. They could have picked, I mean, he's only eight years old, he's about 80 pounds. They could have picked him up and carried him away. I mean, there's a lot of things they could have done before they handcuffed him. It sounds like your answer to my question. It sounds like the answer to your, your answer to my question just now was that you would accept a reversal remand solely on the post-handcuff conduct. We would accept, we would accept a reversal remand on anything, Your Honor. Fair enough. That was a nice touch. You reserved time for rebuttal. Ms. Self? May it please the Court and Counsel, my name is Megan Self and I'm amicus counsel in this case. I'm here today because I'm and you're concerned that if the district court's application of the Haynes exception is affirmed, it will expand the exception in a way that will have a detrimental impact on individuals with disabilities in this circuit.   Almost 20 years ago, it determined that the ADA did not apply to an officer's split-second decision made in self-defense and for the safety of those around him. Now, appellee suggests that we are considering Haynes too narrowly when we say it only applies in life-threatening circumstances. But I would submit that that's the only fair reading of Haynes. When we look at the three. Oh, you are disagreeing with what I said, which is that he should let the kid just keep punching the principal and have him stand there. So, Your Honor, I think under those circumstances, that would be considered under the reasonableness of the combination. I think that for the exception, to avoid the exceptions following the rule, it needs to be confined to the narrow set of circumstances, but a district court could still grant summary judgment on the basis that no reasonable juror could have found that an accommodation was reasonable under those circumstances. You read Haynes as a categorical on-off switch. I do. And I think that, well, if you look at page 801 of the decision, the court states that the exception it's creating applies under the circumstances presented in that case. If those circumstances involve a armed, suicidal male approaching law enforcement within three to four feet despite repeated commands to stop, if that's what creates the exception, and then we then extend it to an eight-year-old with a jump rope where he probably admits he posed no physical threat to the officers, it simply cannot be disputed that that doesn't constitute an expansion of this Court's prior holding. I think you make a fair point that our doctrine is pretty atextual, at a minimum. I think you said. Exactly, Your Honor. I think that there's a number of reasons. My question, though, is why can we not essentially get to the same result, albeit through better textual foundation, simply by analyzing it as a reasonable accommodation question? And that is. That's where you're going. Exactly where I'm going. Why is this? How is this a reasonable accommodation case? So it was presented at the district court level as a reasonable accommodation case, and I think there are a number of reasons why we need to make a distinction between when the Haines exception applies and when it can be determined based upon the facts and when it should be determined based upon the facts and circumstances. I guess I'm going with this because I know your time is limited. Can we put aside the Haines exception? Would you accept a reasonable accommodation doctrine that essentially acknowledges that police officers don't have to, under the ADA, subject themselves or others to physical harm? Not lethal harm, obviously. I think we'd agree on that. But even being hurt. So I think in the vast majority of circumstances, it's a fact question that a jury should determine based upon all the facts and circumstances of the case. Why would we expect Congress to have wanted people to get hurt? Because I think that's why they created the reasonableness prong of the ADA, is they wanted a jury, given the competing interests between the need to not second guess law enforcement operating under difficult circumstances and the need to protect the rights of individuals with disabilities, I think that those, that competing tension is the very reason why Congress intended for it to be considered by, in most instances, by a jury based on all the facts and circumstances of a case and not determined by a judge as a matter of law. Is there a fact dispute here that this boy was essentially using a jump rope, sort of like a whip? I, so I don't think that there's, so there might be a fact dispute as to whether or not it was a jump rope, but I don't think there's anything in the record suggesting that at the time that Officer Baker approached the SW, that he was using it on anyone at that time. If, does that answer Your Honor's question? He had already done some things, and he might yet have done some things, but at the moment, he wasn't doing anything. And the record lacks a lot of facts explaining what, what Officer Baker was actually walking into. We don't know if there was anyone else around. We don't know if there were, we don't know, for example, his colleague said there, let's just stand here and watch. I think at a minimum, that creates a fact question as to whether or not there was an accommodation that was reasonable at that time. So I only have 30 seconds left, but I will want to conclude with this point. I think it's important to remember that this is an 8-year-old with autism that was arrested in school. Congress has done a lot to protect individuals with disabilities in their, in school, including through the IDEA, but law enforcement has taken the position that SROs are not required to comply with the IDEA, and a broad expansion of HANES in schools would leave them without protection in the place where Congress has seen fit that they need it the most, which is in school. So unless the Court has any further questions for me, thank you. Okay. Mr. Krueger. I'm William Krueger, and I represent the Southlake defendants for the last 33 years. I've had the honor and privilege to represent people whose motto is to protect and serve, and I'm honored to be here before the Court. With regard to where we are today, I look at this case, and I have to say, is there a waiver of the sovereign immunity? Is there a waiver of the qualified immunity? Is it specific in these statutes? And I represent to the appellate court that it is not specific waivers of those immunities. Qualified immunity is out of the picture, because he's admitted that he's not appealing the 1983. Qualified immunity doesn't apply to the ADA, RA, and he's not seeking Baker individually anyway. So we're just talking about the City of Southlake. Are you saying the City of Southlake is not subject to the ADA, RA? I think that the City of Southlake is subject to the ADA and the RA, and I think there is questions of sovereign immunity and individual immunity that might be derivative to that city. In that manner, I'm looking at – I don't think I understand what you're saying. They're not subject to sovereign immunity, but they are subject to sovereign immunity? I think that there has to be a specific waiver of sovereign immunity in that statute, just as in state courts, there'd have to be – I thought you just said that the city is subject to the ADA. I'm sorry. I must be missing the nuance. If the waiver is not specific, then the city would not be subject to. If the waiver is specific – I mean, you have the problem of – this is a Federal law, okay? So this isn't something Texas passed and we have to try to decide that they really mean it to be imposed on cities or not. We already have an en banc where we say it's with the City of Arlington, not all that far from Southlake, where we say it does apply, but we went through – there were some other issues in that case. So I'm struggling with the notion that a Federal statute that's very specific about public entities and entities that receive Federal funding, which no one disputes City of Southlake is, is not subject to these laws. And I'm just saying that's under the 11th Amendment going on. I still don't think there's a problem with this situation because we talk about the Haynes exception being an immediate danger that requires a spontaneous response. And when we talk about an immediate danger, it is the threat and it's not the actual injury or damage. And you're saying you had that here? Yes, sir. We had that here. How so? How so? In that this young man brought a weapon which escalated from his first event, where he's turning over tables and hitting teachers and kicking people in the knees and things like that. And he brought a weapon? He did. He says it's a weapon. What is that? That's the homemade nunchucks that he brought that he wouldn't show, that he wouldn't produce until the teacher, the principal goes through the backpack, he produces it and threatens them with it. He kicks them, he hits them. He spills hot coffee on them, throws hot coffee on them. But when Baker showed up and was told to stand down, as we now understand the facts, what was happening at that moment? How was Baker told to stand down? This is the thing, the quote you had that you attributed to Slusser and that your opponent attributed to Baker that he now concedes with Slusser. Slusser is not Baker's boss. Slusser cannot tell Baker to stand down. Okay, but what I'm saying is, whether he can or cannot tell him to, he did, and stand and watch right here say nothing. That's what I'm calling the stand down. We can debate whether that is what that's saying, but okay. At that moment, when Baker walks in, what is the immediate danger? Not what's happened in the past, not what could conceivably happen in the future, but what's the immediate danger at that moment, according to the undisputed evidence? Obviously, it's the child. Okay, what exactly? The same things that had led to this encounter. Okay. At that moment, is he beating anyone? Is he hitting anyone with a rope? Is he jumping around? Is he doing anything other than standing in the hallway, at least under the undisputed evidence? He's in immediate danger at that moment. Coming into this courtroom, I practically had to undress and go through a metal detector. Am I immediate threat? Is your point that his immediate past conduct is what they were afraid he was going to repeat? Absolutely, and that's the problem. Did he retain possession of this rope, jump rope, whatever you want to call it, at the time? Yes. He had the nunchucks at the time. How do you defend the post's handcuffing conduct by the officer? The child is still violent and yelling and threatening death. Why does that justify the words that the officer used? I'm sorry, what? How does that justify the words that the officer used? If the court could tell me the specific words, I'll tell you the justification. You're acting like a punk. Okay, how is that a justification? What's the justification? I'm sorry. What we're asking is, once he's handcuffed, he can scream all he wants, can't punch anybody, can't hit anybody with a nunchuck, rope, gun, or anything else. So why are you being rude to him as a police officer? What is the justification for that? For almost the same reasons why I can't throw a tantrum in this court. Decorum is required in a school. The custodial responsibility of a school is great, as well as its duty to educate. That is not the police officer's job. He's called because they've lost the ability to do that. To retain the peace is the police officer's job. To protect and serve is the police officer's job. He is doing his job, and he is taking a violent situation that they've tried to calm down and trying now to de-escalate that situation in another way. I think he's entitled to do that. The city of Southlake thinks he's entitled to do that. Did Officer Baker know that the child was autistic? Officer Baker had no idea of what the level of problems this child was experiencing. The officer only knew— Let me ask again. Did Officer Baker know that the child was autistic? No. Is that at least a disputed fact? It sounds like you're saying that, but I think there's a question on this. I don't need to dispute it. Let's say that he knew he was autistic. Okay. You're accepting that? I accept that. Okay. So, wow. I mean, this is a scary concept to me that we should bless police officers calling autistic children names when they're sitting there in handcuffs because that somehow promotes decorum in the schools. I mean, that's so far off anything I can even envision. It's really hard for me to know what to ask. Is that the—that's what you're wanting us to say? So that's the opinion you're writing for us. I just want to be clear. To bring that awful situation to a calm, peaceful resolution so that that school could go on functioning, protecting the children in that school and teaching the children in that school, the yelling that came from Officer Baker pales in the comparison and the violent death threats of that young child, S.W. So, yes, I think that the officer yelling at the child, although he paid for that with his job, is sanctioned by the law. Wow. Okay. You said it. I'm sorry. That's your argument. Is your point that the officer was correctly fired for this conduct but it's still a reasonable accommodation? I say that the policies of the city of Southlake are great and they are high, and that's why when a policeman goes to work, he kisses his wife or significant other goodbye and says, I don't know if I'm going to get promoted or fired today, but I am going to do my job and I'm going to come home. That's the policies. Anything that goes wrong in a day can get you fired. That's the cities that I work for. So, consequently, the law in the Constitution is well below, I'm sorry, the standards of the law in the Constitution are much higher than the policies that they run by. I can get fired for anything under a policy, but to violate the law or the Constitution, I have to do something deliberately different. I mean, that is true in the 1983 qualified immunity world. I'm not necessarily sure that's true in this ADARA world, that the differential is as big as the widening arms you have. And that's why I'm saying I don't think there's been a waiver of that immunity that's provided by the Constitution that says these officers in this city are allowed to protect and serve the public pursuant to the Constitution of the United States of America. That Constitution is the soul and heart agreement of this United States with the citizens. And everything else, including the ADA and the Rehabilitation Act, falls subsequent to that. You know, if we didn't have the RA hook of the accepted federal funds, you know, I think that would be a little better argument. But Southlake can say, all right, we will want to be our own. We're in Texas. We want our own life. We just ain't going to take the funds, and we're going to run our city as we run our city. Then I think we may have a closer argument, although I'm not so sure. But I don't understand how you can make the argument you just did under the RA. It applies if you take federal funds for assistance, and they did, and that's it. This is not a contract. You don't sell the constitutional rights for money. There's laws that say how you waive your constitutional rights. Okay. But we're not. Okay. That's fine. That's your position. I heard it. Do I understand, I just want to confirm the record. One of the quotes attributed to Officer Baker after the handcuffing is, you want to act like a punk. This is what happens to little punk kids. I think that's a standard statement in law enforcement. If you're going to act. I'm just asking. I'm literally just asking a record question. Is that you're acknowledging that's part of the record? I'm not saying that's actionable or not. I'm just asking. Yes, sir. Okay. So you acknowledge that's part of it. And I take it your theory is that it's reasonable to use that comment after they've been handcuffed. Yes. The handcuffing is one of the things. That child is not calmed down after he's handcuffed. I'm not challenging. I'm not talking about the handcuffing. I understand. I'm not talking about the act of handcuffing himself. I'm saying once he's handcuffed, is the comment necessary and reasonable? I think the comment's necessary and reasonable because I think what they're showing the child is, whatever your tantrum is, it's not going to alleviate or resolve this in your favor. You need to know now that there are rules of decorum and accommodation both on your side and on the city side, that the ADA and the Rehabilitation Act doesn't take away your requirement that you be somewhat compliant and allow us to teach children and to protect children in this school. I'm not sure you would think I was teaching decorum if I called you a punk. So thank you for that analysis. You're a lawyer. You're doing the best you can to represent your client, but I'm not sure that makes logical sense. I wouldn't appreciate it if you called me a punk or a liar. I would, though, require that you have the law or the facts that put me there. And if the law and the facts put me there, then I need to respond to change your perception and my reality. If I am being a punk, I need to stop. If I am being a liar, I need to stop. I called you a lawyer, not a liar. I hope you understood that. I understand. Okay. Just to be clear. One hopes there's a distinction. Okay. Anything else you'd like us to know? If there's no further questions, I thank the Court for their time and their patience. Thank you. All right. Counselor, you have your five minutes for rebuttal. Just a couple things. At the onset of counsel's discussion, he once again talked about what he believes some carve-out issues within the ADA and 504 regarding qualified immunity, and I don't think he briefed that. But even if he had, once again, in the related issue of whether a 504 ADA pertains to the police department, we have a Fifth Circuit case from 2002, Delano Pyle versus Victoria County, that explicitly says, now almost 18 or 20 years later, that counties and police departments have to follow the ADA and 504. In the Hainsey decision, there's some language that we wrote in our brief that I think is worth reiterating because we quoted it there. The Court, the Fifth Circuit said, once the area is secure and there's no threat to human safety, the William County Sheriff's deputies would have been under a duty to reasonably accommodate Hainsey's disability in handling and transporting him to a mental health facility. And that came out of Pennsylvania Department of Correction versus Yeske and Gorman versus Batch. So I think the law is clear that once the child was handcuffed, putting aside the issue of whether he needed to be handcuffed anyway, if I have enough time, I'll talk about that again as well, that clearly had a duty to accommodate him and address his mental health issues. I think counsel would have, I would agree, would be right, except we're dealing with a mentally ill child. I mean, right off the bat, we know the child is mentally ill. He's incapable of handling his behaviors. He was incapable of handling what his language was. And once again, Your Honor, we talked a lot about what was written in the briefs. If you listen to it, if you listen to what occurred during those almost 18 minutes, it's horrible. It's horrible. So I'll stand on that alone. What's the reasonable accommodation you're seeking? Come again, Your Honor? What's the reasonable accommodation? Well, at that point, at that point. Correct? Once he's handcuffed, yes. Well, I think one thing then would be to bring in the school counselor and let him calm the kid down rather than yelling and exacerbating the mental health issues. It rarely calms people to shout at them. Well. It might shut them up. It doesn't calm them. Yeah. I would agree, Your Honor. The other thing I wanted to go back to while I have a minute or two is, you know, what else could a reasonable officer do? Okay. So he comes onto the scene, and I think the visual depiction, because we do have a video of when he comes in through his body cam, he's just walking into the school district slowly. He's not running. He's not rushed. He's saying hello to people. He's having banter with other parents and other people there. Officer Schleser tells him just to kind of watch for a little bit, and a few seconds later he goes and handcuffs the child. I think it's hard-pressed to say that there was any emergency occurring at that time. Well, how immediate does immediate have to be, I guess, is the question here? Because your opposing counsel says, well, he'd done all this stuff before, and that's enough to sort of create this environment of immediacy. Well, a fair answer to that is that's a fact question that's best left for the jury as well. But in terms of what we're talking about as an issue of law and going back to the pure language of the Hainsey decision, immediate means immediate. Now, I think there's what I would call a penumbra. I mean, you know, we're reasonable people here. But once again, we have to look at what we call the totality of the circumstances, which I started on a while ago, the body size of the child, the body size of the officer, how many are involved, is the child advancing, retreating, or standing still, what kind of weapon is used. These come from all the case law that the judge cited and counsel cited in his brief and we did in ours. Was the threat deadly? Was the threat imminent? Was a crime being committed? Was it open or closed place? What do you do with the sovereign immunity argument that unless it's been more clearly stated that they didn't waive the sovereign immunity? I think Hainsey described it. I mean, I'm sorry, Delano Pyle described that very, very specifically 18 years ago. Police departments have to follow the ADA in 504 for rehab act cases and ADA cases. All right, but what does that mean? I mean, that's my concern here is, you know, the work of law enforcement officers is, I think we would all agree, very, very difficult. Yes. What we ask of officers. I have relatives that are peace officers. No, so you understand. What we ask is a lot. And so when we say the ADA imposes a reasonable accommodation requirement, that's vague lawyer congressional talk. How do we – how do we – what's the standard that you're asking us to impose on officers? We have to face, obviously, a myriad of situations with a myriad of potential uncertain facts and obviously a wide range of physical risks. Once again, in this particular instance, the officer could have done nothing. They could have surrounded the child with other adults. They could have restrained him. They could have used what officers call soft hands or hard hands. They could have picked him up and moved him. The handcuffing was the absolute last interaction that would be suggested under their own CIT program. Unless there are any further questions, Your Honor, thank you very much for letting me be here. It's a great honor. Thank you.